UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE N. HOUSTON, | No. 2:22-CV-01045-JAM-SCR |
| Plaintiff, | |
| v. | **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| CITY OF FAIRFIELD, a public entity; City of Fairfield Police Officers JOSHUA SMITH (BADGE #1730), BRENDAN BASSI (BADGE #1716), DAVID REEVES (BADGE #927), GAIL HILL (BADGE #1201), individually, jointly and severally; | |
| Defendants. | |

INTRODUCTION

Before this Court are cross-motions for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.  The parties filed four briefs in support of and in opposition to the cross motions including Plaintiff Danielle Houston's ("Plaintiff") motion for partial summary judgment, Plf.'s Partial Mot. for Summary Judgment, ECF no. 70; Defendants' City of Fairfield (the "City"), Joshua Smith, David Reeves, Gail Hill, and Brendan Bassi ("Officers," collectively with the City,

1

1  "Defendants") cross-motion for summary judgment, Def.'s Mot. for

2  Summary Judgment, ECF no. 85; Plaintiff's opposition/reply to

3  Defendants' cross-motion, Plf.'s Reply to Def.'s Mot. for Summary

4  Judgment ("Plf.'s Reply"), ECF No. 88; and Defendants' reply in

5  support of cross-motion, Def.'s Reply In Support of Mot. for

6  Summary Judgment ("Def.'s Reply"), ECF No. 92.  For the reasons

7  stated below, the Court grants Plaintiff's motion for summary

8  judgment with respect to her unlawful arrest claim.  For all

9  other Fourth Amendment claims, the court denies Plaintiff's

10  motion and grants Defendants' motion on these claims. The Court

11  also grants Defendants' motion on Plaintiff's <u>Monell</u> claim and

12  punitive damages claim.[1]

13                    I.   FACTUAL BACKGROUND

14       Plaintiff Houston filed a civil rights action following an

15  investigatory encounter with the City of Fairfield Police.  The

16  key facts are undisputed, and the relevant events were captured

17  on video or body worn cameras ("BWC").  <u>See</u> Video Exhibits, ECF.

18  Nos. 70 & 85.  At approximately 8:20pm on August 7, 2020, a

19  concerned citizen called the Fairfield Police and Fire Emergency

20  line to report a physical fight involving a man with a gun in a

21  shopping plaza parking lot.  Ex. U (Def.'s Compilation Video),

22  ECF No. 85.  The person with a gun was described as a light-skin

23  or Hispanic male wearing a white t-shirt. He was reported to have

24  entered a black four-door vehicle.  <u>Id.</u>  The shopping plaza was

25  known by law enforcement to be located in a high crime area.  Ex.

26  K (Sgt. Gail Hill Depo.) at 125:21-23, 127:10-13.

27

28  [1] A hearing on this cross-motion was held on September 24, 2024.

                                   2

1    Sergeant Gail Hill was first to respond to the scene and
2    observed a group of individuals and several black cars that
3    matched the description given by the emergency caller.  Id. at
4    61:17-21.  Sgt. Hill subsequently ordered back-up to detain the
5    group of individuals and ordered all black cars in the plaza to
6    be stopped.  Id. at 100:18-24; Plf.'s Reply to Def.'s Statement
7    of Undisputed Facts ("SUF"), Fact No. 68, ECF No. 88-1.

8    Around the same time of the call, Plaintiff Houston parked
9    her black four-door vehicle in the shopping plaza and entered a
10   store near the group of individuals.  Ex. U at 4:21; Plf.'s
11   Video, Exhibit 5 at ECF No. 70-9.  As Plaintiff Houston exited
12   the store, she interacted with some members of the suspect group
13   before getting into her car.  Ex. U at 6:35-8:30. As Plaintiff
14   Houston drove out of her parking spot, an individual from the
15   same group wearing a white t-shirt approached her vehicle and
16   appeared to lean into Plaintiff Houston's open passenger window.
17   Id. at 8:50-9:01.  This interaction was witnessed by Sgt. Hill
18   and Officer Bassi, who had parked nearby.  Id.; Ex. K at 97:10-
19   16.

20   Officer Bassi proceeded to follow Plaintiff Houston as she
21   exited the plaza parking lot and initiated a "high-risk" stop to
22   investigate her possible involvement in the reported gun crime.
23   Ex. N (Officer Bassi's BWC) at 2:00-2:35; Plf.'s Reply to Def.'s
24   SUF, Fact No. 89.  Plaintiff Houston was then ordered out of her
25   vehicle, questioned, handcuffed, and placed in the back of a
26   patrol vehicle by Officer Reeves.  Ex. U at 9:36-12:00; 13:38.
27   Plaintiff's person and car were searched by Officers Bassi,
28

3

1 Smith, and Taylor[2], and both her and her vehicle were cleared of

2 any person or weapons within minutes of her being stopped.

3 Plf.'s Reply to Def.'s SUF, Fact No. 106; Ex. U at 12:15; 13:30.

4 Indeed, Plaintiff Houston maintained that she "did not have

5 anything" and "didn't do anything" throughout her detention.

6 However, even after no weapon was uncovered on her person,

7 Plaintiff remained detained in handcuffs in the back of the

8 patrol car for almost twenty more minutes.  Ex. U at 13:30-29:46.

9 Plaintiff Houston asked for her handcuffs to be removed and

10 complained of discomfort while being detained, but did not seek

11 any medical care the night of the incident.  Ex. U at 27:34;

12 Plf.'s Reply to Def.'s SUF, Fact No. 176.  Interactions between

13 Plaintiff and Officers were respectful throughout the

14 investigatory stop and Plaintiff Houston fully complied with

15 orders at all times throughout the incident.

16     Plaintiff Houston now brings suit under 42 U.S.C. § 1983

17 against the individual police officers involved in the incident

18 and the City, alleging that Defendants violated her rights to not

19 be unlawfully searched or seized under the Fourth Amendment when

20 they stopped her vehicle following the emergency call (First

21 Cause of Action).  Plaintiff further alleges a Monell violation

22 against the City of Fairfield (Second Cause of Action).  See

23 First Amended Compl., ECF No. 34.

24                     II.   OPINION

25     A.   Legal Standard

26     Summary judgment is granted "if the movant shows that there

27

28 [2] Officer Taylor was dismissed from this action.

1    is no genuine dispute as to any material fact and the movant is
2    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
3    Material facts are those that may affect the outcome of the
4    case.  Nat'l Ass'n of Optometrists & Opticians v. Harris, 682
5    F.3d 1144, 1147 (9th Cir. 2012).  A dispute is genuine "if the
6    evidence is such that a reasonable jury could return a verdict
7    for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477
8    U.S. 242, 248 (1986).

9         When, as here, a video of the incident exists and neither
10   party questions its accuracy, the Court views "the facts in the
11   light depicted by the videotape." Scott v. Harris, 550 U.S. 372,
12   381 (2007). The Court will not "'credit a party's version of
13   events that the record, such as an unchallenged video recording
14   of the incident, quite clearly contradicts.'" Sabbe v. Washington
15   Cnty. Bd. Of Comm'rs, 84 F.4th 807, 816 (9th Cir. 2023) (quoting
16   Williamson v. City of Nat'l City, 23 F.4th 1146, 1149 n.1 (9th
17   Cir. 2022)).  The Court therefore takes as true facts that are
18   clearly depicted in the recordings.  See Id. at 380-81.

19        B.   Analysis
20             1.   Qualified Immunity

21        Because Defendants raise the defense of qualified immunity,
22   Def.'s Mot. for Summary Judgment at 23, Plaintiff Houston must
23   demonstrate that Officers Smith, Bassi, Reeves, and Hill
24   violated her Fourth Amendment rights by searching or seizing her
25   in a manner that was clearly established as unconstitutional at
26   the time of the incident.  See Nicholson v. City of Los Angeles,
27   935 F.3d 685, 690 (9th Cir. 2019).

28        Even if an officer's conduct is objectively unreasonable,

5

1    "'[q]ualified immunity attaches when an official's conduct does

2    not violate clearly established statutory or constitutional

3    rights of which a reasonable person would have known.'" Id.

4    (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018) (per

5    curiam)).  Public officials are shielded from liability unless

6    the plaintiff can prove (1) the official violated a statutory or

7    constitutional right (2) that was clearly established.  Ashcroft

8    v. al-Kidd, 563 U.S. 731, 735 (2011).  For a right to be

9    "clearly established," existing "precedent must have placed the

10   statutory or constitutional question beyond debate," such that

11   "every" reasonable official, not just "a" reasonable official,

12   would have understood that he was violating a clearly

13   established right.  Id. at 741.

14              2.   Officers' Initial Stop Was Constitutional

15        Plaintiff alleges that Officers detained her in violation

16   of her Fourth Amendment rights because they lacked reasonable

17   suspicion.  See Plf.'s Partial Mot. for Summary Judgment at 8-

18   11.  Specifically, Plaintiff argues that Officers' seizure of

19   her was unreasonable because they mistook certain descriptive

20   facts and did not have particularized suspicion to stop her in

21   relation to the reported gun crime.  Id.

22        The Fourth Amendment protects "[t]he right of the people to

23   be secure in their persons, houses, papers, and effects, against

24   unreasonable searches and seizures."  U.S. Const. amend. IV.

25   There are two categories of police seizures under the Fourth

26   Amendment: Terry stops and full-scale arrests. See Allen v. City

27   of Portland, 73 F.3d 232, 235 (9th Cir. 1995).  Terry stops

28   require reasonable suspicion and arrests require probable cause.

6

1   See <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968) (holding that officers

2   may conduct a reasonable search for weapons regardless of

3   whether he has probable cause to arrest the individual for a

4   crime); <u>Allen</u> 73 F.3d at 236-37 (citing <u>Delgadillo-Velasquez,</u>

5   856 F.2d 1292, 1296 (9th Cir. 1988) ("[p]robable cause exists,

6   when at the time of arrest, the agents know reasonably

7   trustworthy information sufficient to warrant a prudent person

8   in believing that the accused had committed or was committing an

9   offense").  Neither party argues that Officers had probable

10  cause to arrest Plaintiff and agree that what is in dispute is

11  whether Officers possessed sufficient reasonable suspicion to

12  detain Plaintiff.

13      Under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), police officers may

14  conduct a brief, investigative stop of an individual when they

15  have reasonable suspicion that the "person apprehended is

16  committing or has committed a criminal offense." <u>Arizona v.</u>

17  <u>Johnson</u>, 555 U.S. 323, 326 (2009).  An officer cannot rely only

18  upon generalizations that "would cast suspicion on large

19  segments of the law-abiding population." <u>United States v.</u>

20  <u>Manzo-Jurado</u>, 457 F.3d 928, 935 (9th Cir. 2006).

21      Courts proceed from the perspective of a "reasonable

22  officer on the scene" and must "allow for the fact that police

23  officers are often forced to make split-second judgments—in

24  circumstances that are tense, uncertain, and rapidly evolving—

25  about the amount of force that is necessary in a particular

26  situation." <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 775 (2014)

27  (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396-97 (1989)).

28      Reasonable suspicion justifying an investigatory stop

1    exists when an officer is aware of specific, articulable facts
2    which form the basis for particularized suspicion, which
3    includes two elements: 1) assessment must be based on totality
4    of the circumstances, and 2) the assessment must include
5    reasonable suspicion that the particular person being stopped
6    has committed or is about to commit a crime.  U.S. v. Keeler, 8
7    Fed.Appx. 631 (9th Cir. 2001).

8         Here, the Court finds that Officers had enough
9    particularized suspicion to stop Plaintiff Houston because she
10   drove and parked a black vehicle in the shopping plaza that
11   matched the description given by the emergency caller and Sgt.
12   Hill observed Plaintiff interacting with the group of reported
13   suspects.  See Ex. U.  Moreover, a tall male wearing a white
14   shirt leaned into Plaintiff Houston's open car window, giving
15   rise to the reasonable belief that a gun may have been placed in
16   her vehicle.  See Plf.'s Reply to Def.'s SUF, Fact No. 166; Ex.
17   H at 77:10-78:10, 92:13-15; Ex. U at 8:50 – 9:02.  Thus, a
18   reasonable officer on the scene would have believed Plaintiff
19   was linked to the reported crime.

20        Supreme Court precedent supports the principle that even if
21   officers are ultimately mistaken, as long as their
22   investigations are reasonable, their actions do not violate the
23   Fourth Amendment.  For example, U.S. v. Cortez, 449 U.S. 411,
24   421 (1981) held that objective facts and circumstantial evidence
25   suggesting that a particular vehicle was involved in unlawful
26   activity was sufficient basis to justify an investigative stop.
27   To be "reasonable is not to be perfect, and so the Fourth
28   Amendment allows for some mistakes on the part of government

1   officials, giving them 'fair leeway for enforcing the law in the
2   community's protection.'" <u>Heien v. North Carolina</u>, 574 U.S. 54
3   (2014) (quoting <u>Brinegar v. United States</u>, 338 U.S. 160, 176
4   (1949)).

5       Even though the Officers ultimately determined that
6   Plaintiff Houston did not have any relation to the gun crime,
7   the Supreme Court has recognized that searches and seizures
8   based on mistakes of fact can be reasonable.  <u>Id.</u>  Thus, even
9   though these Officers mistook certain descriptive facts, this
10  does not detract from the objective reasonableness of their
11  initial stop and detention of Plaintiff under the totality of
12  these circumstances.

13      3.   <u>Officers' Bodily Frisk and Vehicle Search Were</u>
14           <u>Constitutional</u>

15      Plaintiff next argues that Officers' bodily frisk and
16  search of her vehicle were also impermissible under the Fourth
17  Amendment.  <u>See</u> Plf.'s Partial Mot. for Summary Judgment at 12,
18  16-18.  However, contrary to this contention, caselaw is clear
19  that an officer may conduct a pat down search when he or she
20  reasonably believes that the subject "may be armed and presently
21  dangerous." <u>U.S. v. I.E.V.</u>, 705 F.3d 430, 432-433 (9th Cir.
22  2012).  Similarly, in <u>Pennsylvania v. Mimms</u>, 434 U.S. 106
23  (1977), the Supreme Court held that police may order persons out
24  of an automobile and may frisk those persons for weapons if
25  there is a reasonable belief that they are armed and dangerous.
26  As discussed previously, Officers reasonably suspected that
27  Plaintiff Houston may have been involved in the reported gun
28  crime and that the gun may have been passed through her open

1  window.  Thus, based on video footage and Sgt. Hill's

2  observations, it was reasonable for officers to pat Plaintiff

3  down because they reasonably believed the weapon may have been

4  on her person.

5      With regard to the car search, Plaintiff argues that

6  Officers search of her vehicle, wallet, and purse were

7  unreasonable, and that no Fourth Amendment exception exists

8  because she did not consent to the searches.  Plf.'s Partial

9  Mot. for Summary Judgment at 16-18.  However, as Defendants

10 assert in their cross-motion, the Ninth Circuit has stated that

11 all that is required for a protective search under Terry is a

12 reasonable suspicion that the suspect is armed.  See United

13 States v. Orman, 486 F.3d 1170, 1176 (9th Cir. 2007).  In Orman,

14 the court emphasized the need for officers to be able to pursue

15 their work without fear of violence and that, where a weapon is

16 readily accessible, limited protective steps are allowable.  Id.

17 at 1177-78.  Additionally, the need for a protective search

18 applies regardless of whether carrying a concealed weapon

19 violates state law.  Id. at 1177 (citing Adams v. Williams, 407

20 U.S. 143, 146 (1972)).

21     Supreme Court precedent further illuminates the

22 permissibility of car and container searches where officers

23 possess a reasonable suspicion that a person may be armed.  In

24 Michigan v. Long, 463 U.S. 1032, 1049 (1983), the Supreme Court

25 emphasized that protective searches are justified when police

26 have a reasonable belief that the suspect poses a danger, noting

27 that roadside encounters between police and suspects are

28 especially hazardous and danger may arise from the possible

10

1   presence of weapons in the area surrounding a suspect.  Thus, a

2   search "limited to those areas in which a weapon may be placed

3   or hidden" is permissible if the officers have a reasonable

4   belief that the suspect is dangerous and the suspect may gain

5   immediate control of weapons.  Id. at 1033.

6       Based on these precedents, the Court finds that Officers'

7   search of Plaintiff's car, purse, and wallet were reasonable

8   protective measures for officer safety given their suspicion

9   that a gun may have entered through her window and that the gun

10  could have been hidden in her car or purse.

11      Given the independent Fourth Amendment basis justifying

12  Officers' search, the Court does not need to reach the issue of

13  whether an exception exists or whether Ms. Houston gave

14  voluntary consent for Officers to search her vehicle.  Even if

15  there were a question as to the reasonableness of Officers'

16  search of her car or the items within Plaintiff Houston's car,

17  Plaintiff has not pointed to any analogous cases that put

18  Defendants on notice as to the unconstitutionality of searching

19  a purse or wallet during an investigatory stop for weapons,

20  necessitating the conclusion that Defendants would be entitled

21  to qualified immunity in the alternative case.

22          4.   Plaintiff's Terry-Stop Became An Unlawful Arrest

23      Despite Officers' initial compliance with the Fourth

24  Amendment's constitutional requirements, Plaintiff argues that

25  her Terry stop turned into a de facto arrest unsupported by

26  probable cause.  Plf.'s Partial Mot. for Summary Judgment at 13.

27  Defendants do not challenge that they lacked probable cause to

28  arrest Ms. Houston, Hearing Transcript p. 41, line 6, ECF No.

1  102, and the Court finds that under Washington v. Lambert, 98

2  F.3d 1181 (9th Cir. 1996), Officers are not entitled to

3  qualified immunity on this claim.  Rather, Plaintiff is entitled

4  to summary judgment on her unlawful arrest claim because

5  Washington clearly put Officers on notice such that every

6  officer would have understood that he was violating Plaintiff's

7  clearly established right to not be subject to overly-intrusive

8  police tactics under these circumstances.

9      There is no bright-line rule to determine when an

10  investigatory stop becomes an arrest.  Id. at 1185.  Rather, in

11  determining whether stops have turned into arrests, courts

12  consider the "totality of the circumstances."  United States v.

13  Del Vizo, 918 F.2d 821, 824 (9th Cir.1990) (quoting United

14  States v. Baron, 860 F.2d 911, 914 (9th Cir.1988).  In looking

15  at the totality of the circumstances, courts consider the

16  intrusiveness of the stop, the aggressiveness of the officer's

17  actions and how much the plaintiff's liberty was restricted, and

18  the reasonableness of the officer's methods under the

19  circumstances.  Washington, 98 F.3d at 1188-89.

20      The Ninth Circuit has advised that "[u]nder ordinary

21  circumstances, when the police have only reasonable suspicion to

22  make an investigatory stop, drawing weapons and using handcuffs

23  and other restraints will violate the Fourth Amendment."  Id. at

24  1187.  More intrusive measures may be appropriate: 1) where the

25  suspect is uncooperative or takes action at the scene that

26  raises a reasonable possibility of danger or flight; 2) where

27  the police have information that the suspect is currently armed;

28  3) where the stop closely follows a violent crime; and 4) where

1   the police have information that a crime that may involve

2   violence is about to occur.  Id. at 1189.  Courts also consider

3   how many officers are present at the scene.  Id. at 1190.

4       In this case, the Court finds that each Washington factor

5   weighs in Plaintiff Houston's favor because Officers only

6   possessed reasonable suspicion and no factors indicate that this

7   was an extraordinary circumstance requiring the use of more

8   intrusive measures like handcuffs or other restraints.

9       Plaintiff Houston was fully cooperative and did not take

10  any actions at the scene to raise a reasonable possibility of

11  danger or flight; Officers search of Plaintiff revealed she was

12  unarmed; Officers had no specific information Plaintiff Houston

13  was involved in the physical fight; and there was no indication

14  that any future crime was about to occur.  By the time Officer

15  Reeves handcuffed Plaintiff and placed her into the patrol

16  vehicle, no facts suggest that Ms. Houston was armed,

17  uncooperative, dangerous, or a flight risk.  By all accounts,

18  Plaintiff's actions demonstrated her absolute compliance with

19  every officer instruction and willingness to answer every

20  question asked.  See generally, Ex. U.  Moreover, there were

21  sixteen officers on the scene with at least four officers

22  specifically attending to Ms. Houston.  See Plf.'s Reply to

23  Def.'s SUF, Fact No. 40; Ex. U.

24      Defendants argue that their intrusive actions of keeping

25  Plaintiff handcuffed in the back of a police vehicle did not

26  turn her detention into an arrest.  Def.'s Mot. for Summary

27  Judgment at 29.  Defendants cite Garza v. City of Salem, 690

28  F.Supp.3d 1188 (D. Or., Sept. 4, 2023) and Gallegos v. City of

1   Los Angeles, 308 F.3d 987, 992 (9th Cir. 2002) to support their

2   argument.  However, these cases are distinguishable because they

3   involved individuals whose uncooperative actions themselves

4   disrupted and prolonged officers' investigations, implicating

5   the extraordinary circumstances that permit use of more

6   intrusive measures under Washington.  In contrast, Plaintiff

7   Houston was fully cooperative throughout the entire

8   investigation.

9        Defendants also suggest that their intrusive actions are

10  justified by the third Washington factor because their

11  investigation followed a violent crime.  The Court disagrees and

12  reads the third prong in Washington, as elaborated by fn. 14, to

13  require specific information that an individual be involved in

14  the purported violent crime or "closely match" a description

15  given to police.  98 F.3d 1181 (citing United States v. Jacobs,

16  715 F.2d 1343, 1346 (9th Cir. 1983).  The undisputed facts show

17  that Plaintiff Houston did not match the description given by

18  the emergency caller and was not involved in the reported

19  physical fight since she is female and arrived in the parking

20  lot after the altercation occurred.  No reasonable officer would

21  have believed Plaintiff to be the individual involved in the

22  physical fight and as such, Plaintiff does not implicate any of

23  the extraordinary factors delineated by Washington.

24       Defendants also argue that having two crime scenes was a

25  unique circumstance justifying Plaintiff's prolonged arrest.

26  See Def.'s Mot. for Summary Judgment at 19.  However, the fact

27  that other officers were attending to a separate crime scene

28  does not influence the Washington factors as applied to

                                14

1   Plaintiff Houston or the priority of her constitutional rights.

2   Under a straightforward application of <u>Washington</u>, Plaintiff

3   Houston's detention squarely became an unreasonable arrest.

4        In sum, <u>Washington v. Lambert</u> is controlling authority that

5   puts Officers on notice that they unconstitutionality converted

6   Plaintiff Houston's detention from an investigatory stop into an

7   arrest by using unreasonably intrusive restraints for an

8   unnecessary period of time.  The Court finds that Officers are

9   not entitled to qualified immunity on this claim.

10       Because "a plaintiff must establish the integral

11  participation of the officers in the alleged constitutional

12  violation," <u>Monteilh v. Cnty. of Los Angeles</u>, 820 F. Supp. 2d

13  1081 665 F.3d 1076, 1081 (C.D. Cal. 2011), and simply "being

14  present at the scene of an alleged unlawful act" is

15  insufficient, the Court finds that Plaintiff has failed to

16  allege sufficient facts that Defendants Hill and Smith were

17  integral participants in her unlawful detention.  However,

18  Officers Bassi and Reeves, by virtue of handcuffing Plaintiff

19  Houston and keeping her in the police vehicle had "fundamental

20  involvement" in her unlawful arrest and are thus liable for the

21  constitutional violation.  <u>Id.</u>

22            5.   <u>Plaintiff Fails to Show Officers Used Excessive</u>

23                 <u>Force</u>

24       Plaintiffs final Fourth Amendment challenge alleges that

25  officers used excessive force in two ways: 1) by pointing guns

26  when stopping Plaintiff Houston and 2) by using tight handcuffs.

27  Plf.'s Partial Mot. for Summary Judgment at 19-23.  In an

28  excessive force case, the Court views "the facts in the light

1  most favorable to the nonmovant, but [is] 'limited to

2  considering what facts the officer[s] could have known at the

3  time of the incident.'" Sabbe v. Washington Cnty. Bd. of

4  Comm'rs, 84 F.4th 807, 815-16 (9th Cir. 2023) (quoting Est. of

5  Lopez ex rel. Lopez v. Gelhaus, 871 F.3d 998, 1006 (9th Cir.

6  2017)).

7       As discussed above, Officers initially believed that a gun

8  may have passed into Plaintiff's vehicle and Plaintiff's

9  temporary detention became an unlawful seizure once reasonable

10  suspicion of her involvement in the alleged gun crime had

11  dissipated.  While her prolonged detention without probable

12  cause is clearly unconstitutional under Washington, Washington

13  is not an excessive force case.  The principal question in

14  Washington was "whether the police action constituted a Terry

15  stop or an arrest," Washington at 1185.  To the extent that

16  Washington put officers on notice, it only does so with regard

17  to the constitutional standards for unlawful arrest and this

18  Court does not read Washington to extend to excessive force

19  claims.

20       The caselaw cited by Plaintiff for her excessive force

21  claim is not persuasive because the cases do not contain

22  analogous facts and are not sufficiently similar to place

23  officers on notice.  For example, Plaintiff cites to Robinson v.

24  Solano County, 278 F.3d 1007, 1014 (9th Cir. 2002) (involving a

25  gun pointed at point blank range), Tekle v. United States, 511

26  F.3d 839, 845 (9th Cir. 2007) (involving a gun pointed at an

27  individual's head and fifteen to twenty officers), Espinosa v.

28  City & Cnty. of San Francisco, 598 F.3d 528, 537 (involving use

16

1  of deadly force), and Green v. City & Cnty. Of San Francisco,

2  751 F.3d 1039, 1049 (involving six officers conducting an

3  investigation for a stolen vehicle).  These cases either involve

4  far more severe conduct by police officers or do not involve

5  investigation of a suspected gun crime.

6      Plaintiff also raises Sen v. City of Los Angeles, 2022 WL

7  2236085, at *8, 9 (C.D. Cal. Apr. 20, 2022) (cleaned up), but

8  Sen specifically found that the mere use of handcuffs, without

9  more, did not violate the Fourth Amendment and granted qualified

10 immunity to the officers involved.  Similarly, Defendants point

11 to Pernell v. City of Los Angeles, 650 F.Supp.3d 910, 927-28

12 (C.D. Cal 2022), which held that mere use of handcuffs, without

13 more, does not support an excessive force claim.

14     Ultimately Plaintiff's cited authorities do not clearly

15 establish that the use of drawn weapons or the use of handcuffs

16 constitutes excessive force in similar circumstances.  Thus, the

17 Court finds that qualified immunity attaches to the excessive

18 force claims and grants Officers' motion for summary judgment on

19 this claim.

20          6.   Plaintiff Has Failed to Establish Monell

21               Liability

22     Plaintiff contends that she is entitled to summary judgment

23 on her Monell claim because Fairfield Police Department has an

24 unconstitutional practice of employing high-risk stops.  See

25 Plf.'s Partial Mot. for Summary Judgment at 23.  To avoid

26 summary judgment for the City on the Section 1983 claim,

27 Plaintiff Houston must demonstrate that a City policy, practice,

28 or custom caused a deprivation of rights.  Steel v. Alameda

17

1  Cnty. Sheriff's Off., 428 F. Supp. 3d 235, 238 (N.D. Cal. 2019)

2  (citing Monell v. Dep't of Social Services of the City of N.Y.,

3  436 U.S. 658 (1978)).  However, as covered in the Court's Fourth

4  Amendment discussion above, the Court does not find that

5  Officers violated any constitutional right of Plaintiff except

6  when Plaintiff's prolonged detention became an arrest.

7       Under Monell, proof of "a policy or practice requires more

8  than a few occurrences of challenged conduct.  A single or even

9  a few isolated and sporadic incidents of unconstitutional

10  conduct are not enough to impose municipal liability under

11  Section 1983."  See Escobar-Lopez v. City of Daly City, 527 F.

12  Supp. 3d 1123, 1128 (N.D. Cal. 2021) (citing Gant v. Cnty. of

13  Los Angeles, 772 F.3d 608, 618 (9th Cir. 2014)); see also Gordon

14  v. Cnty. of Orange, 6 F.4th 961, 974 (9th Cir. 2021).

15       In Plaintiff Houston's case, her allegation of "no more

16  than an 'isolated or sporadic incident[ ]' ... cannot form the

17  basis of Monell liability for an improper custom."  Saved

18  Magazine v. Spokane Police Dept., 19 F.4th 1193, 1201 (9th Cir.

19  2021) (quoting Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.

20  1996)).  Plaintiff has not shown an unconstitutional practice

21  that is "'so persistent and widespread as to practically have

22  the force of law.'"  Escobar, 527 F. Supp. 3d at 1128 (quoting

23  Connick v. Thompson, 563 U.S. 51, 61 (2011)).

24       In her Reply, Plaintiff also lodges a theory based on

25  "ratification" to support her claim for Monell liability against

26  the City.  Plf.'s Reply at 22.  Related to this argument, the

27  Court received supplemental briefs regarding Loggervale, et al.

28  v. County of Alameda, et al., No. 23-15483, 2024 WL 4234878 (9th

1  Cir. Sept. 19, 2024), a recent Ninth Circuit opinion on

2  ratification theory.  See Plf.'s Notice of Suppl. Authority, ECF

3  No. 93; Def.'s Suppl. Brief, ECF No. 97.  In Loggervale, the

4  jury found that Alameda County ratified the constitutional

5  violations because Sheriff Ahern, an official policymaker,

6  specifically reviewed and approved of the internal investigation

7  findings from the incident, writing on the memo: "Briefed. No

8  further action required.".  Id. at * 3.

9      Loggervale is readily distinguishable from this case. In

10  this case, Plaintiff Houston has not presented evidence that a

11  final policymaker ratified the Officers' actions or that a Chief

12  reviewed Sgt. Divine's investigative memorandum.  See Christie

13  v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999).  Plaintiff

14  contends that the Fairfield Police Department Manual and

15  testimony by Jausiah Jacobsen establishes that Plaintiff

16  Houston's investigation package was reviewed by the Chief of the

17  Fairfield Police Department.  See Plf.'s Notice of Suppl.

18  Authority at 1.  This representation is not supported by the

19  evidence Plaintiff cites.

20      The Court agrees with Defendants that the deposition

21  transcript is ambiguous at best, and merely establishes that

22  generally, investigative memoranda "should" go to the captain

23  and that chiefs should be made aware.  ECF No. 88-7, at 52:20-

24  56:13.  There is no specific evidence that the Fairfield Chief

25  of Police reviewed, approved, or even knew about the

26  investigation surrounding Plaintiff Houston's incident.  Unlike

27  in Loggervale, Plaintiff has presented no evidence that a final

28  decision maker signed off on the investigative memorandum.  To

1   prove ratification, Plaintiff must show that a specific

2   policymaker "made a deliberate choice to endorse" the Officer's

3   actions.  Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir.

4   1992).  Plaintiff has not provided such proof and no reasonable

5   jury could so find.

6       Because Plaintiff Houston does not point to any other

7   instances of unlawful detention, can only show success under her

8   own unlawful arrest claim, and cannot prove ratification theory,

9   no reasonable jury could find the City liable for Officer Bassi

10  or Officer Reeves's unconstitutional conduct under Monell.

11  Defendants' motion for summary judgment on this claim is

12  granted.

13              7.  Punitive Damages

14      Defendants have moved for summary judgment on Plaintiff's

15  punitive damages claim.  To recover for punitive damages against

16  an individual officer in a Section 1983 case, a plaintiff must

17  show that the officers' conduct is "motivated by evil motive or

18  intent" or "involves reckless or callous indifference to the

19  federally protected rights of others." Smith v. Wade, 461 U.S.

20  30, 56 (1983).  The Ninth Circuit has also explained that "[t]he

21  standard for punitive damages under Section 1983 mirrors the

22  standard for punitive damages under common law tort cases,"

23  which extends to "malicious, wanton, or oppressive acts or

24  omissions." Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).

25      There are no facts in the record supporting a finding that

26  Officers Bassi or Reeves were motivated by evil intent or that

27  they were recklessly indifferent to Plaintiff's rights.  Indeed,

28  BWC footage reveals that officers were professional and

1   attentive throughout the investigation.  <u>See</u> Ex. U.  Plaintiff's

2   unlawful arrest was the result of a prolonged delay and nothing

3   in the record demonstrates that Officers maliciously or

4   recklessly prolonged Plaintiff's detention.  Similarly,

5   Plaintiff stated that Officers largely treated her with respect.

6   <u>See</u> Ex. H (Deposition of Danielle Houston) at 40:22-25, 41:1-3.

7   Given the facts, no reasonable jury could find reckless

8   disregard for Plaintiff's rights to support an award of punitive

9   damages.

10                          III.   ORDER

11       For the reasons set forth above, the Court GRANTS IN PART

12   Plaintiff's motion for partial summary judgement as to her

13   unlawful arrest claim against Defendants Bassi and Reeves for

14   their integral participation in the Fourth Amendment violation.

15   Defendants are entitled to qualified immunity on Plaintiff's

16   remaining Fourth Amendment claims.  Defendants' motion for

17   summary judgment is GRANTED and Plaintiff's Motion is DENIED on

18   the remaining claims: 1) initial seizure of Plaintiff, 2) bodily

19   frisk of Plaintiff, 3) search of Plaintiff's vehicle and

20   belongings, 4) excessive force, 5) <u>Monell</u> liability, and 6)

21   punitive damages.

22       IT IS SO ORDERED.

23   Dated: November 21, 2024

24

25                                        _____

26                                        JOHN A. MENDEZ
                                          SENIOR UNITED STATES DISTRICT JUDGE

27

28